## AMERICAN METAL CAP CO. v. ANCHOR CAP & CLOSURE CORPORATION.

Circuit Court of Appeals, Second Circuit.
July 19, 1927.

No. 335.

Patents ⊚⟳328—1,079,238, claims 2, 4, 9, for metal bottle cap, held not infringed.

Hammer patent, No. 1,079,238, claims 2, 4, and 9, for a metal bottle cap or seal, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by the American Metal Cap Company against the Anchor Cap & Closure Corporation. Decree for plaintiff (278 F. 670), and defendant appeals. Reversed and remanded, with instructions.

Appeal from a decree of the District Court for the Eastern District of New York holding valid and infringed claims 2, 4, and 9 of patent 1,079,238, to Charles Hammer, for a bottle cap or seal.

The invention is of the class of bottle caps made of metal, having a disk of cork, or other nonporous composition, fixed in the under side of the top, and a skirt, or depending flange, vertical to the plane of the top, and surrounding the end of the bottle's neck when in place. In order to hold on the cap and make it water-tight, it must be pressed down with considerable force, and this had in the past been accomplished in various ways. As far back as 1866, Letchworth (55,512) had disclosed such a jar and a cap fastened in place by a bayonet joint. Various modifications appeared later, all disclosing threads on the outside of the neck of the bottle, beneath which lugs, extending inward from the flange of the cap, caught hold, and exerted an increasing pressure as the cap was twisted. Young, 1876 (172,289); Cornwall, 1895 (532,536); McManus, 1904 (772,250); Hoelemann, 1906 (819,139); Hammer (1906) 821,-488; Hammer, 1908 (894,633). The patent in suit was not therefore broadly new, but depended for its validity upon the new mechanism which it disclosed to accomplish the old result, together with certain advantages in the result itself, not necessary to describe.

The vertical flange was corrugated to give added solidity to the metal against lateral strains. Its lower edge was rolled outwardly into a bead by $1\frac{1}{2}$ revolutions, thus forming at the base a circular rigid tube, with the edge completely tucked in. Both this tube and the corrugations (struck out from the metal) were of sufficient diameter to slip easily over the glass threads on the neck of the bottle. To prevent rust the metal of such caps is lacquered or tinned, and the roll of the bead was to keep the untreated edge of the metal from being exposed to acids, salts, or air, as had been the case in prior inventions.

If the cap had had nothing more, it would, however, not have locked upon the threads of the neck, so that it was necessary to provide lugs extending inwardly from the bead at intervals which should engage the under side of the threads. Such lugs were described in the following part of the specifications, page 2, lines 54–67:

"These projections are inclined to the horizontal to conform to the inclination of the threads, and are produced by pushing inwardly the walls of the bead, so as to fold said walls together and to impart to the in-struck portion a tapering or substantially triangular form, whereby the strength of the projection is increased to better adapt it to withstand circumferential and vertical strains. By this construction a multiwalled projection is provided, which is sufficiently stiff to resist deflection, and consequently at all times bear with the same degree of pressure upon the threads."

This is the feature of the invention, covered by claims 2 and 4 in suit, which read as follows:

"2. A sheet metal bottle cap provided with a coiled bead at the lower edge of the flange

thereof, said bead being collapsed at intervals to provide in-struck locking projections.

\* \* \* \* \*

"4. A sheet metal cap having a vertically corrugated flange formed with a coil enveloping its free edge, and having said coil collapsed at intervals to provide in-struck locking projections reinforced by the adjacent corrugations."

Another part of the invention was to make the lugs so described more resilient to radial pressure than the rest of the bead, so as to accommodate the cap to necks of slightly varying diameters. This is described as follows (page 2, lines 77–90):

"To this end such portions of the flange and bead are flattened or offset inwardly on straight lines from the generally circular contour of the remainder of the flange, as indicated at *11ᵃ* in Figs. 2 and 7. By this construction, the locking projections are inset to a greater degree for locking engagement with the necks of jars smaller than their designated diameter, while the resistance of the aforesaid portions of the flange to deflection is decreased, permitting the same to yield for interlocking engagement with the necks of jars exceeding their designated diameter."

Claim 9, which, it was argued, covered this feature, reads as follows:

"9. A sheet metal bottle cap provided with a rounded bead at the lower edge of the flange thereof, said bead being flattened at intervals to provide locking projections."

The invention, which was patented on November 18, 1913, had an immense success, over 500,000,000 having been sold up to 1921 at a price of over $3,000,000. It has been infringed only in one instance, and the infringer stopped upon complaint made.

The nearest approach to the patent was Hammer's earlier patent of 1908 (894,633), in which the flange was not corrugated, and the bead was not rolled into a complete revolution, the untreated edge being left exposed to the air. The fastening lugs in this patent were "in-punched locking projections \* \* \* located in line with, or in a plane slightly below, the plane of the free edge of the bead, by which said projections are practically concealed and protected from casual injury." The neck of the bottle below the threads was provided with a shoulder against which the bead was forced in the descent of the flange. The theory was that the bead would close upon contact with this shoulder, and would bind the cap with greater force against the threads.

The defendant's cap, which was found to infringe, was of the same general character as the patent in suit. The flange was corrugated, and the differences lay in the formation of the bead and lugs. These are best described by the process of their manufacture. Instead of being made out of circular disks of flat metal, like prior caps in the art, the defendant's cap was made from a blank which had four semilenticular protuberances from the circumference, spaced 90 degrees apart. The flange and corrugations were then made, and the resulting lower edge of the flange, instead of being in one plane, would show four vertically depending segments. The bead was made by spinning the metal upon itself in only one complete revolution, and as there was an excess of metal at each of the segments, the circular form of the bead in section was necessarily distorted at those points, the excess being pushed inwards towards the center, thus forming four horizontally extending lugs, which engaged the threads on the bottle. The lugs were in consequence of only one thickness of metal, and irregular in section, bulging inward and being somewhat flattened at the base. Also at the lugs the circumference of the bead was flattened a trifle, so that in plane it did not present a perfect circle. This was not done by design, so far as appeared, and was so slight as to be detectable only by the use of a micrometer.

The District Judge held that the defendant's cap infringed all the claims, and gave the usual interlocutory decree.

Livingston Gifford and Norman N. Holland, both of New York City, for appellant.

C. A. Weed, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge. We see no reason to consider the validity of the patent, which for the purposes of this case we shall assume. The case turns merely upon infringement and is in two parts: First, whether the defendant has "a coiled bead at the lower edge of the flange, said bead being collapsed at intervals," as provided in claims 2 and 4, between which we make no distinction; second, whether it has a "bead flattened at intervals," as provided in claim 9.

It seems to us too plain for doubt that the word "collapsed," in claims 2 and 4, can by no possibility include such a bead as the defendant's. Possibly Hammer was entitled to a patent for any cap in which there was a bead at the end of the flange, the metal of which was pushed in in any way to make the lugs, though it must be confessed that his earlier patent of 1908 (894,633) struck very close to any such invention. We should think

it doubtful whether there was patentable distinction in changing the position of the "in-punched locking projections," so that they would be plainly within the circumference of the bead, and in completing the revolution which made it. Moreover the language of the earlier disclosure seems to anticipate any such idea; i. e., "or in a plane slightly below the plane of the free edge of the bead, by which the projections are practically concealed and protected from casual injury." Certainly, when the bead, being engaged upon the shoulder of the bottle, was forced up to complete the revolution, the lug must have been within the circumference of the bead. However, we need not, and do not, decide whether so broad a claim would have been anticipated. With his earlier patent before him it seems to us that "collapsed" must be read upon his disclosure. It is inconceivable that it should have been used to cover a lug so close to that already described, and if it did, candor required him to express more clearly his wider intention.

Nor are we either concerned with whether the earlier patent was inoperative. Hammer's testimony would not justify such a conclusion in the only sense that it is understood in patent law. As, however, this is a case of interpreting the claims, not of anticipating them, we are not to indulge in any speculation as to the operability of the references cited, certainly unless their relevancy was then challenged on the ground that they were invalid for that reason. The plaintiff is in no position to maintain any such thesis.

Finally, the case is not one in which references are necessary, or indeed permissible, for purposes of interpretation. The disclosure is perfectly plain, the claims read directly upon it, and can mean nothing more than what they say, taken in their setting. The lugs are to be "produced by pushing inwardly the walls of the bead, so as to fold said walls together." Thus is formed "a multiwalled projection." All this is totally inapplicable to the defendant's bead, whose walls are spread further apart at the lugs, which are not "multiwalled," but single. The lugs gain, therefore, no added resistance through multiplication of the walls; only one thickness of metal resists the vertical pressure, and only one the circumferential, except as the whole circumference coacts when the lug is pushed outwardly. The action so described in the specifications is covered and limited by the word "collapsed," which no ingenuity of construction can expand to comprise so different a structure.

Again, we cannot accept the notion that the "in-struck portion" of the defendant's bead—i. e., the lug—has a "tapering or substantially triangular form." Viewed in plan, nobody could assert that the defendant's lugs were of this shape, and so indeed the plaintiff seems to admit. Its argument is that this language refers to the shape of the lug in vertical section. The words "impart to the in-struck portion a tapering form" are, however, very ill chosen to convey any such meaning. Naturally, they mean the outer appearance of the lug as it will be seen, not so unusual a conception as the form of its vertical section. Had that been meant, it would almost certainly have been explicitly stated. Moreover, to make the lug triangular or tapering in any sense in which its cross-section in Figure 4 can be said to be such, would not strengthen it against either vertical or radial strains. For that it was necessary that the base where it is attached to the flange should be wider than the bearing apex. This is unquestionably what the specification meant; the present gloss has no warrant either in language or function.

Hence we have no hesitation in holding that claims 2 and 4 are not infringed. So far as the defendant has taken any of Hammer's inventions, it has taken from his earlier disclosure. The validity of its own patent, and the representations by which it was obtained, are altogether irrelevant. They are not estoppels.

Claim 9 seems to us to refer to the feature by which the circumference of the bead is flattened at intervals, so as to drive it in, and so to make lugs without collapsing the walls. Claim 3 is for the bead, both collapsed and flattened; claim 2 is for it collapsed; claim 9 describes it as only flattened. It was an eleventh hour addition, inserted after the patent had been allowed, and, so far as we can see, important, at least theoretically, for its logical symmetry. Whether the bead, without being collapsed, could in fact be pushed in enough to form a lug, may possibly be doubtful; but, if that was not the assumption, there is nothing in the disclosure to support the claim, which then merely hangs in the air. The applicant's letter, in which apparently the claim was allowed, does indeed speak of a "multifold notch." So far as this counts at all, it is against the plaintiff, for it seems to presuppose a collapse of the bead, so that the walls are in contact. For argument's sake we ignore it; still, the claim means no more than the feature described in the passage quoted in the statement of facts above.

So understood, the defendant does not infringe this claim. If one takes a micrometer, one can detect that the perfect circle of the bead is flattened where the lugs have been made. Without that help, no flattening is discoverable. Patents deal with the functions of things, with their capacity to serve human purposes. The refinements of micrometry are irrelevant, when they do not disclose differences of function. The flattening of the defendant's bead does not have the results claimed in the specifications. That is enough to dispose of the plaintiff's contention.

Decree reversed; cause remanded, with instructions to dismiss the bill for noninfringement.