### PETERSIME INCUBATOR CO. v. BUNDY INCUBATOR CO.

#### No. 391.

District Court, S. D. Ohio, W. D.

Jan. 12, 1942.

Toulmin & Toulmin, of Dayton, Ohio (H. A. Toulmin, H. A. Toulmin, Jr., and Rowan A. Greer, all of Dayton, Ohio, of counsel), for plaintiff.

Albert L. Ely, of Cleveland, Ohio, and John M. Cole, of Springfield, Ohio (Ely & Frye, of Cleveland, Ohio, and Cole & Hodge, of Springfield, Ohio, of counsel), for defendant.

NEVIN, District Judge.

This is a suit under the Federal Declaratory Judgment Act, Section 274d Judicial Code, 28 U.S.C.A. § 400, and under the patent laws of the United States. In the pleadings the question of the validity and claimed infringement of two patents is involved, to-wit: United States Letters Patent Nos. 1,911,249 and 1,911,250, both issued May 30, 1933, to Frank E. Stover and now owned by defendant, The Bundy Incubator Company. The two patents relate, the first to an apparatus and, the second to a method for the artificial incubation of eggs.

The original bill of complaint was filed August 6, 1935. In it there was joined with the present defendant, B. A. Mayer (individually), President of the defendant corporation, The Smith Incubator Company of Cleveland, Ohio, and Samuel B. Smith (individually) of Cleveland, Ohio, President of The Smith Incubator Company. The original bill charged the defendants with violation of the Anti-Trust Laws; conspiracy in restraint of trade and unfair competition. Plaintiff also averred that its method and the apparatus which it manufactured and sold did not infringe upon the Stover patents.

On motions of the several defendants, the bill of complaint was dismissed on April 17, 1937, as to all defendants, except The Bundy Incubator Company. All charges against defendant, The Bundy Incubator Company, also were dismissed except the charge of unfair competition and

the alleged non-infringement of the patents by plaintiff.

On April 23, 1937, plaintiff filed an amended bill of complaint against the present defendant, The Bundy Incubator Company, alleging unfair competition by the circulation of written and oral charges of infringement and threats of suit. The amended bill of complaint also averred that the incubators manufactured and sold by plaintiff did not infringe the Stover patents, or either of them, and that the patents were invalid and void over prior patents and prior publications and certain public uses by officers of plaintiff; by one Frank H. McCoy of Cleveland, Ohio, and one Robert B. P. Crawford of Chicago, Ill.

Later (on plaintiff's motions), other alleged prior uses were added by plaintiff and on February 8, 1940, plaintiff filed its amended bill of complaint, incorporating therein its charges of unfair competition, non-infringement and invalidity of the patents upon sixteen alleged prior uses theretofore and therein referred to.

In its amended bill, plaintiff prays for a declaratory judgment adjudging that the incubators of plaintiff are not infringements of either one of the two patents, and that both patents are null, void and invalid, and for injunctive and other relief from defendant by reason of unfair methods of competition.

In its answer defendant denies all charges of unfair competition as alleged in the amended bill of complaint. It asserts validity and charges infringement. It prays that the bill be dismissed and for its costs.

The cause came on for hearing on plaintiff's last amended bill of complaint (filed February 8, 1940) and defendant's answer thereto, just referred to.

At the trial, counsel for defendant stated that the only claim charged to be infringed by plaintiff was claim 5 of Stover patent No. 1,911,250. As to this, the record (Pp. 3, 4) shows the following:

"Mr. Toulmin (Of counsel for Plaintiff): * * * The patents in suit, Nos. 1,911,-249 and 1,911,250, are companion patents. The first one deals with mechanism and the second one deals with method. I am not sure from the trial brief of the defendant whether all of the claims are relied upon in patent 1,911,249. Will you advise me of that, Mr. Ely?

"Mr. Ely (Of counsel for Defendant): The claim involved herein, your Honor, and the only claim that admits of any discussion is claim No. 5 of patent No. 1,-911,250. There is no charge of infringement of any of the other claims.

"Mr. Toulmin: And no charge of infringement in 1,911,249.

"Mr. Ely: No. You need not discuss that at all.

"The Court: Do I understand that, so far as this case is concerned, then, except as it may come in by way of reference, history or something, I do not have to pass on anything so far as Patent No. 1,-911,249 is concerned?

"Mr. Toulmin: I so understand, your Honor, that they make no charges against us on that patent.

"Mr. Ely: That is correct.

"The Court: Neither that patent nor none of its claims are in issue in this case.

"Mr. Ely: No.

"Mr. Toulmin: There is to the second patent 1,911,250, claim 5, that is involved in this action; is that correct?

"Mr. Ely: That is correct."

Any consideration, therefore of Patent No. 1,911,249 will be in connection only with the alleged unfair competition phase of the case.

It is agreed that the court has jurisdiction of all phases of the case, including the alleged unfair competition. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L. R. 1000; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Siler v. Louisville & Nashville R. R. Co., 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852; Vogue Co. v. Vogue Hat Co., 6 Cir., 12 F.2d 991.

No useful purpose would be served by the court here discussing the subject of "incubation". Both "the well-known phenomena which attend the incubation of eggs under natural conditions" and "successful artificial incubation" are described in Smith v. Snow, 294 U.S. 1, 3, 4, 55 S. Ct. 279, 280, 79 L.Ed. 721, and elaborated upon in Cugley v. Bundy Incubator Co., 6 Cir., 93 F.2d 932. Further discourse here would be mere repetition. The court deems such reference to the subject as is

made in its Findings of Fact herein sufficient for present purposes.

Claim 5 (of Patent No. 1,911,250) here in issue reads as follows: "5. In a method of operating a mammoth incubator, placing eggs in an enclosure, heating the air to a constant temperature, stirring the air in the enclosure, humidifying the air to a relatively low humidity, moving the eggs to another enclosure, again heating the air in which the eggs are located, again stirring the air, again humidifying the air to a relatively higher humidity without increasing the temperature and while maintaining it at the same constant."

■ In the Cugley case, just referred to (93 F.2d 932), the Court of Appeals of this (Sixth) Circuit held the foregoing claim (5) valid (and there) infringed. Under these circumstances, the rule of law which this court should follow seems well settled—it is in fact, here, not controverted. It is succinctly stated by the Court in Badische Anilin & Soda Fabrik v. A. Klipstein & Co., C.C., 125 F. 543, at page 546, as follows: "The rule is well settled that, when a patent has once been sustained by an appellate court, a subordinate court, dealing with the same patent subsequently, inquires first whether the second record contains anything not before the appellate court (whether mentioned in its opinion or not), and, if it finds something new, inquires next whether the new matter is of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, had it been advised of its existence." The "new matter" should be clear, substantial and reasonably conclusive. Lektophone Corporation v. Miller Bros. Co., D. C., 37 F.2d 580, 581; Bellows-Claude Neon Co. v. Sun Ray Gas Corporation, D.C., 39 F.2d 907, affirmed Sun Ray Gas Corp. v. Bellows-Claude Neon Co., 6 Cir., 49 F.2d 886.

In their brief (Pp. 7, et seq.), counsel for plaintiff say: "In no sense are we asking this Court to reverse the Court of Appeals of this Circuit in the Cugley case. On the contrary, we base and premise our case here upon the position of the Bundy Incubator Company and its counsel in the Cugley case and the decision of the Court of Appeals in that case in construing the Stover Patent in suit No. 1,- 911,250. We merely present to the Court a different record establishing different prior uses and defenses than those presented in the Cugley case and ask this Court to thus decide the question of the validity of the patent in the light of these new defenses. * * * Under these facts we submit the Court, bringing to bear its own conclusions from the proof here submitted, will be impelled to find the Stover Patent in suit No. 1,911,250, invalid notwithstanding the determination of the validity of that patent by the Court of Appeals for this Circuit on another and different state of facts and record."

Defendant asserts (Br. Pp. 7, 33, 34) that "the prior uses in this case are like the rejected McCoy defense in the Cugley Case"; that "the history of this case is a fair illustration of the language used by the Supreme Court in the old Barbed Wire [Patent] Case (143 U.S. 275, 284, 285 [12 S.Ct. 443, 36 L.Ed. 154])",[1] and that

---

[1] In the Barbed Wire case the Supreme Court at pages 284, 285 of 143 U.S., at page 447 of 12 S.Ct., 36 L.Ed. 154, say: "We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer."

"the Stover patent has been the fair game of infringers. In the Cugley case we not only had to meet McCoy, but Robbins, Lower, Bundy, Buckeye and New Town alleged prior uses as well. These having failed, we are now compelled to contest the same old issue with McCoy again, and the new prior users, Petersime, Porter, Morris and finally Adair. Surely at some time patent litigation should be settled. Each new infringer searches the highways and byways for some one who will swear sufficiently so that a plausible case of anticipation is made out."

It is not disputed that upon the case here presented plaintiff must establish its alleged prior uses by evidence "free from reasonable doubt" and that "every reasonable doubt should be resolved against him." The Barbed Wire Patent, supra (143 U.S. page 285, 12 S.Ct. page 447, 36 L.Ed. 154); United Shoe Machinery Corporation v. Day Wood Heel Co., 6 Cir., 46 F.2d 897, 898; Weisbaum v. Gerlach, D. C., 33 F.Supp. 783; McKay Co. v. Shott Mfg. Co., D.C., 25 F.Supp. 716, 720, 721.

As to this, plaintiff (R.Br. Pp. 50, 51) says: "it is respectfully submitted that the plaintiff has made out its case beyond a reasonable doubt, and has established that the method or practice disclosed and claimed in Claim 5 of Stover Patent No. 1,911,250, was fully understood, known and used by the Petersimes in 1925–26 and in 1929; by the Adair-Milligan incubator in Cal. in 1924–1925; by the Adair-Universal Pictures Corporation incubator at Universal City, Los Angeles, in 1924–1925; by the Adair-Valley Hatchery incubator at Rosemead, Cal. in 1927; by the Adair-San Gabriel Valley Hatchery in 1928; by the Adair-Petaluma Hatchery incubator in 1928 and the L. N. Porter Super-Chix Hatchery incubator in 1927; and by the McCoy incubator prior use in Cleveland, Ohio in 1927 and the McCoy incubator prior use by Bilz in Omaha, Nebraska in 1929. It is further submitted that this record shows, beyond reasonable doubt, that the plaintiff has committed no act of infringement of Claim 5 of the Stover Patent in suit No. 1,911,250."

█ The court is unable to agree with this conclusion on the part of plaintiff. On the contrary, it is the view of the court that, upon the evidence produced, plaintiff has failed to meet the requirements of the law as to each and every prior use submitted—they "have not been es-tablished by the clear and convincing evidence required and certainly not beyond a reasonable doubt, McKay Co. v. Shott Mfg. Co., D.C., 25 F.Supp. 716, 'for it is the settled rule that when the executive department of the government has granted a patent, proof of a prior use must be made out, in effect, beyond a reasonable doubt, and thus the act of the executive in granting the patent must be clearly and convincingly shown to have been unwittingly mistaken. E.g., Radio Corporation of America v. Radio [Engi-. neering] Laboratories, 293 U.S. 1, 7, 8, 55 S.Ct. 928, 79 L.Ed. 163; Deering v. Winona Harvester Works, 155 U.S. 286, 300, 15 S.Ct. 118, 39 L.Ed. 153; The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.), 143 U.S. 275, 284, 12 S.Ct. 443, 36 L.Ed. 154; General Motors Corp. v. Leer [Auto Supply Co.], 2 Cir., 60 F.2d 902, 904; A. B. Dick [Co.] v. Simplicator Corporation, 2 Cir., 34 F.2d 935, 939.' Profilm Corp. v. Blumenstock, D.C., 31 F.Supp. 239, 243." Weisbaum v. Gerlach, supra, 33 F.Supp. page 787.

The court agrees with the conclusion of defendant as stated on P. 114 of its brief, as follows: "The claim in suit has been sustained by the Court of Appeals of this Circuit. * * * As the proofs of prior use or prior patenting are not new nor of such a compelling and different character and kind as to warrant the conclusion that the Court of Appeals would have found differently this Court should hold the patent valid."

The court further concludes that plaintiff "has committed" acts of "infringement of Claim 5 of the Stover patent in suit No. 1,911,250."

█ The court deems it unnecessary to further discuss the various contentions of the respective parties. Its views (including those on the questions of infringement and alleged unfair competition phase of the case) are sufficiently set forth in its Findings of Fact and Conclusions of Law herewith. As stated by the court in Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., D.C., 27 F.Supp. 86,.at page 87: "it is now a work of supererogation to write a considered and detailed opinion on the facts in what used to be an equity cause and is now called a non-jury cause, for the place of the opinion must now be taken by formal findings of fact and conclusions of law, separately stated and num-

bered. Title 28 United States Code, Section 723, 28 U.S.C.A. § 723."

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court has arrived at the following:

## Findings of Fact.

1. This is an action brought by plaintiff, The Petersime Incubator Company, under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, and under the Patent Laws of the United States against defendant, The Bundy Incubator Company. Both parties are Ohio Corporations and engaged in competition with each other in the manufacture and sale of incubators used in the artificial incubating and hatching of eggs.

2. Defendant is owner by assignment of United States Letters Patent to Frank E. Stover, Nos. 1,911,249 and 1,911,250, both issued May 30, 1933, the former relating to an incubator for hatching eggs and the latter to a method of hatching eggs. The apparatus shown in both patents is identical. Patent No. 1,911,250 is a division of the original application filed October 31, 1930.

3. Plaintiff in its pleadings asks a declaratory judgment holding the two letters patent referred to in Finding No. 2 invalid and if valid not infringed by plaintiff. Plaintiff also seeks a judgment and injunctive relief against defendant by reason of alleged unfair methods of competition practiced by defendant.

4. Neither the validity of Stover patent number 1,911,249 nor the infringement by plaintiff, of any of its claims, is now in issue on the phase of the suit under the Patent Laws. As to Stover patent number 1,911,250 the only claim in issue is the process or method claim number 5 thereof.

5. There is an actual controversy between the parties as to the question of validity and infringement of Claim 5 of the Stover patent in suit number 1,911,250. This Court has jurisdiction to hear and determine this cause both under the phase involving the Patent Laws of the United States and the issue of alleged unfair competition of defendant.

## Validity.

6. Claim 5 of Stover Patent No. 1,911,250 is directed to a process employed in the operation of mammoth incubators in which eggs are set in staged incubation in a main cabinet known as "the incubating chamber," which is equipped with means for agitating the air about the eggs. At about the eighteenth day, or as the eggs approach the hatching stage, they are removed from the main chamber and placed in a separate chamber known as the "hatching chamber," also provided with an air agitating device. In order to practice the process of incubation covered in the Stover patent, the humidity within the incubating chamber is maintained at a relatively low point, while the humidity in the hatching chamber is maintained at a relatively high point. The temperature within the hatching chamber is not allowed to increase beyond the temperature in the incubating chamber. This process is described at lines 89 to 99 of page 3 of the patent as follows: "The humidity control and the amount of humidity in the incubating compartment are the essentials of my invention. I arrange the humidity from 78 to 80 degrees while maintaining the temperature at 99½ degrees. When the eggs are at the end of the 18th day of incubation, I move them over into the hatching compartment where I increase the humidity from 84 to 86 degrees while maintaining the temperature at 99½ degrees."

7. Hen eggs require twenty-one days of incubation under conditions of heat and humidity to hatch chicks. At the tenth or eleventh day the eggs pass from an "endothermic" or heat absorbing condition to an "exothermic" or heat generating condition, and when the eggs have reached the period where, under the Stover process, they are transferred to the hatching chamber, the temperature of the eggs is substantially in excess of the temperature at which the hatching chamber should be maintained to follow the Stover process. At the same time the humidity must be maintained at the relatively high point to follow the Stover process.

In order to maintain these conditions of low temperature and high humidity in the apparatus shown in the Stover patents, a portion of the air in the hatching chamber is passed through a humidifier-cooler. This humidifier-cooler is constituted by a box on the side of the incubator provided with the passage 27, shown in Fig. 12. In moving through this passage the air meets a spray thrown by the rapidly revolving paddle wheel 30 and is then returned to the hatching chamber. The accelerated evaporation caused by this operation not

only increases the humidity of the entire body of air in the hatching chamber to the point required, but the cooling effect offsets the heat given off by the eggs so that the low temperature is maintained. See Cugley v. Bundy Incubator Co., 6 Cir., 93 F.2d 932, 933.

8. Claim 5 (here in suit) was held valid and (there) infringed by the Circuit Court of Appeals of this (Sixth) Circuit in the case of Cugley v. Bundy Incubator Co., 93 F.2d 932, decided December 13, 1937. The advantages of the Stover process are given at page 933 of that opinion as follows:

"It is the theory of the method in suit that during the hatching period an increased humidity is needed. The chick, which is attached to the shell by a thin membrane, must turn itself inside the shell in order to 'pip,' or break through the shell. If the membrane dries, the chick cannot do this, and must be manually removed from the shell. The chick comes out of the shell wet, and if the air is dry, evaporation is too rapid, and the chick is chilled. A higher humidity corrects this condition, and also promotes the calcium metabolism of the chick, allowing it to absorb part of the calcium from the shell. This is advantageous in two ways: it makes the chick sturdier and weakens the shell, making it easier for the chick to break out. If the air is dry, the down flies through the compartment, tending to spread a baccillus infection. For these reasons it is essential that the humidity during the hatching process be increased over that maintained during the incubation process. The degree of humidity necessary for the hatching process is detrimental to the incubating process, resulting in a high mortality of embryos.

"Since eggs in the hatching period give off much heat, a humidifier cooler is provided by Stover to keep the temperature constant and to increase humidity by passing a portion of the air through a spray of water created by a revolving wheel. The use of the Stover method produces new and beneficial results. Incubators using this method have increased their hatches from six to fifteen per cent."

9. Claim 5 of the patent is for a combination of the various steps recited, the omission of any one of the steps failing to achieve the results or to anticipate the process. As stated by the Court of Appeals in the Cugley case (page 934 of 93 F.2d): "While the component elements of the method are old, it achieves such new and

highly meritorious results that we conclude that it rises to the dignity of invention."

10. The concurrent increase in humidity and the low temperature in the hatching chamber cannot be secured in incubators or hatching chambers in which water pans are the humidifying means and ventilation the cooling means. In such cases in order to offset the heat given off by the hatching eggs, the ventilators must be opened to such an extent as to cause the loss of the excess humidity.

11. The process of claim 5 of the Stover patent was not obtainted in incubators or separate hatchers of the prior art in which water pans were relied upon for the humidity and ventilation for cooling.

12. It is agreed that the prior patents and prior uses here relied upon were equipped with water pans for humidity and ventilation for cooling.

13. In order to carry out the Stover process the separate hatching chamber must be provided with a positive cooling means, such, for example, as the spray device shown in the Stover patent; the humidifier-cooler used by plaintiff in its "Hatchibator;" or moisture pads such as used in the Cugley machine. These devices are all "humidifier-coolers."

14. The application for Stover patent No. 1,911,250 was filed in the Patent Office October 31, 1930, and matured into a patent issued May 30, 1933. It is now conceded, however, that the date of the invention disclosed and claimed in Claim 5 thereof was in the month of May, 1929.

15. In plaintiff's Amended Bill of Complaint there is an allegation, as follows:

"11. Plaintiff further avers that said Stover Patents Nos. 1,911,249 and 1,911,250, are null and void for lack of novelty in the subject matter claimed, because the same and all substantial and material parts thereof were in public use or on sale, and were known to, and used by divers other persons within the United States before the date of said alleged Stover inventions, among such persons being the following:

"(a) Ira M. Petersime and Ray Petersime, of Gettysburg, Ohio, and at Gettysburg, Ohio, where they manufactured and sold incubators in 1925, and thereafter, all as known to them and to others of that place and vicinity in the year 1925 and thereafter.

"(b) Frank H. McCoy and others, of Cleveland, Ohio, and at Cleveland, Ohio, as known to said Frank H. McCoy and others,

where said machine or incubator was manufactured and sold in 1927 and thereafter by the McCoy Electric Incubator Co., later known as McCoy Electric Incubators Inc.; and also, in 1927 and thereafter, as known by Wellington J. Smith of Cleveland, Ohio, who was interested in said enterprise.

"(c) Robert B. P. Crawford, of Chicago, Ill., and at Chicago, Ill., who invented and perfected an incubating and brooding apparatus in October, or thereabouts, in the year 1927, as known to him and to others.

"(d) L. N. Porter of Tulsa, Oklahoma, Sand Springs, Oklahoma, and El Reno, Oklahoma, in 1927, 1928 and 1929.

"(e) Morris Manufacturing Company of El Reno, Oklahoma, its executives, officers and employees; B. F. C. Morris of El Reno, Oklahoma, at said place and elsewhere in 1928 and thereafter.

"(f) Imperial Sash & Door Company of Omaha, Nebraska, at Omaha, Nebraska, and elsewhere, and the officers, executives and employees thereof in 1929 and thereafter.

"(g) The Universal Hatcheries being the poultry department of Universal Pictures of Universal City, California, its executive officers and employees, Charles E. Adair, Frank A. Downing and others at Universal City, California, in 1924 and 1925 and thereafter.

"(h) The International Hatchery, its executive officers and employees, Charles E. Adair, Charles Rowe and others at San Gabriel, California, in 1927 and thereafter.

"(i) The San Gabriel Valley Hatchery, its executive officers and employees, Charles E. Adair, George Dunn and others at Visalia, California, in 1927 and thereafter.

"(j) The Kerr Hatchery, its executive officers and employees, Charles E. Adair, George Kerr and others at San Gabriel. California, in 1927 and thereafter.

"(k) The American Brooder Corporation, its executive officers and employees, Charles E. Adair and others at Alhambra, California, in 1927 and thereafter.

"(1) The Johnson Hatchery Company, its executive officers and employees, Charles E. Adair, William Bisbee and others at Rosemead, California, in 1927 and thereafter.

"(m) The Penngrove Hatchery, its executive officers and employees, Charles E. Adair, T. Lyons and others at Petaluma, California, in 1927 and thereafter.

"(n) The California Breeding Farms, its executive officers and employees, Charles E. Adair, John T. Milligan and others at Lankershim, California, in 1927 and thereafter.

"(o) Frank Mussler, Charles E. Adair and others at Alhambra, California, in 1927 and thereafter.

"(p) Gerke Duck Ranch, its executive officers and employees, Charles E. Adair, Fred Gerke and others at El Monte, California, in 1927 and thereafter."

No one of the foregoing alleged prior uses has been established beyond a reasonable doubt nor has plaintiff proven upon the whole of the record that "all substantial and material parts thereof (Patent in suit No. 1,911,250) were in public use or on sale, and were known to, and used by divers other persons within the United States before the date of said alleged Stover inventions." [2]

---

[2] It appears from the record (Plaintiff's Ex. No. 104) that Mr. John L. Robbins of Denver, Colorado, was present at, and took a more or less active part in, the taking of the depositions of J. T. Milligan (Pp. 2, 11, 18) and Charles E. Adair (Pp. 164, 210, 213 et seq.) regarding the so-called Adair prior uses. Mr. Adair testified (Ex. 104, P. 320): "RXQ799. Who paid your expenses prior to this immediate matter, who paid them? A. Mr. Robbins asked me to hunt up some of this testimony which I did, and Mr. Robbins paid me $90 for my time that I was occupied in getting that up, and I have the expense of the trip down here and back to my ranch. Insofar as my time was concerned, Mr. Robbins paid me that."

Defendant asserts (Br. P. 34) that "Robbins has an immense stake in the outcome of this case, and his previous history indicates that he would not hesitate at any means to accomplish the destruction of the Stover patent which he infringes. (See letters from Toulmin & Toulmin dated June 14, 1935, Deft's Exs. A–18 and A–19, in which plaintiff's attorneys hold that Robbins infringes.)" and that "The so-called documentary evidence in the Adair matter was, we charge, manufactured for the purpose of this case at the solicitation of the man who has been branded by the Court of Appeals as 'not entirely credible' and 'completely discredited.'"

Plaintiff says (R. Br. P. 27, 28): "An assault is made on Adair because it is claimed that in 1936 John L. Robbins and Cugley knew of Adair's activities but Adair's testimony was not used in the Cugley case. * * * We cannot see why or how this has any probative value

16. The prior art patents relied upon by plaintiff do not anticipate Stover. They are substantially like those relied upon in the Cugley case. While isolated steps may be suggested in one or the other, none shows the combination of steps which constitute the Stover invention.

### Infringement.

17. Beginning in July, 1935 (Plff's Ex. A–5), plaintiff has manufactured and sold to the trade its "Hatchibator," shown in Plaintiff's Exhibit 85 (Rec. P. 501). One of these "Hatchibators" was offered in evidence as Defendant's Exhibit B–6 and was examined by the Court. This is an incubator having an incubating compartment and a hatching compartment separated by a solid partition. In each compartment is located an egg-tray holding drum around which moves a bladed paddle wheel which agitates the air in each compartment. The egg trays in the hatching compartment are constructed of wire mesh, which will tend to restrict the circulation of the air through the trays. Each compartment is provided with an electric heater which is controlled by a thermostat which is manually adjustable so that any desired temperature can be maintained in either compartment. Each compartment is provided with a mechanical humidifier which consists of a shaft provided with 8-inch disks which dip into water in a pan. The shaft in each chamber is rotated by a separate motor which is controlled by a manually adjustable humidistat located in the compartment. As the disks rotate, they receive a film of water from the pan which is exposed to the draft of air propelled over the surfaces of the disks by the paddle wheel. The device, therefore, acts as a humidifier-cooler. It is not denied that as the heating means and the humidifying means are each separately and adjustably controlled in each chamber, the "Hatchibator" is capable of operation to perform the Stover process.

18. Plaintiff has manufactured and sold an incubator with a separate hatcher which is capable of operation in infringement of claim 5 of Stover patent No. 1,911,250.

19. The humidifier-cooler in the incubating compartment has 24 disks. The humidifier-cooler in the hatching compartment has 63 disks. The increase in evaporating area, therefore, is substantially threefold. This is for the purpose and with the intent of producing quickly and maintaining higher humidity in the hatching chamber. The increase in evaporating area also makes the device a more effective cooler in the hatching chamber.

20. When an operator follows plaintiff's instructions, the "Hatchibator" performs in accordance with the detailed specifications of Stover patent No. 1,911,250 and claim 5 thereof.

21. The instructions which are furnished by plaintiff to users of the device are intended and calculated to secure an operation of the "Hatchibator" in accordance with claim 5 of Stover patent No. 1,911,250.

22. Plaintiff manufactures and sells a device capable of infringing use of claim 5 of Stover patent No. 1,911,250 and sells it with the intent that it shall be so used.

### Unfair Competition.

23. In its Amended Bill of Complaint plaintiff makes the following allegation: "7. The defendant herein has been circularizing the trade by written communications and verbal statements of salesmen and other representatives and executives of its organization, charging that the plaintiff herein is an infringer of said patents, and threatening the trade of the plaintiff with patent infringement suits thereunder. The plaintiff has called upon the defendant, The Bundy Incubator Company, to cease such unfair competitive acts, but it has failed to answer this request and has failed to cease the unfair competitive acts. The plaintiff avers that such notices of infringement under Patents Nos. 1,911,249 and 1,911,250 are unfounded."

24. Although there was some reference to it in the deposition (Plaintiff's Ex. 102, P. 58 et seq.) of Ira M. Petersime (President of plaintiff company) the proof does not support plaintiff's allegation that "verbal statements" were made by "salesmen and other representatives and executives of its (defendant's) organization, charging that the plaintiff herein is an infringer of said

---

as establishing that Adair testifying now in this case did not tell the truth or that these facts prove that Robbins and Adair 'manufactured' this whole testimony."

In the Cugley case the Court of Appeals, referring to (this same man) Robbins, (page 935 of 93 F.2d) said: "But Robbins' testimony is not entirely credible. * * * As to his prior use of a humidifier cooler, which Robbins claims that he invented in 1928, this is completely discredited by numerous statements in his various catalogues and advertisements."

patents, and threatening the trade of the plaintiff with patent infringement suits thereunder."

25. Sometime prior to August 6, 1935 (the date of the filing of the original bill of complaint herein), defendant issued and distributed to the trade a circular addressed "To All Hatcherymen" entitled "Announcement On Patents" (Plaintiff's Ex. 103-E). The pertinent part of that "Announcement" reads as follows:

"Announcement on Patents
"To All Hatcherymen:
* * *

"In 1929 we introduced a new method of incubating and hatching eggs in separate compartments which involves a definite relation of temperature and moisture at different stages of incubation. This was developed under the supervision of an incubator engineer of great experience and at considerable expense, and patents covering this method have been issued. The success of this method is attested by its popularity with the trade.

"We as owners of United States Letters Patent No. 1,911,249 and No. 1,911,250 which cover the construction and method described above are advised by patent counsel that they cover the operation of separate incubator-hatchers now in general use.

"The Buckeye Incubator Company and the Smith Incubator Company have recently signed license agreements for the protection of their customers under these patents.

"It becomes our duty to demand that these patents be respected and join with our licensees in the prosecution of any infringements.

"Yours very truly,
"The Bundy Incubator Company
(Signed)    B. A. Mayer
"B. A. Mayer, President"

26. The circular set out in part in Finding of Fact No. 25 contains no reference to plaintiff herein. There is no proof that the trade or business of plaintiff was in any way interfered with, or that plaintiff suffered any damage, on account thereof.

27. Defendant has not been guilty of unfair competition.

28. Irrespective of what is stated in Finding of Fact No. 27—in view of the statements made by its counsel at the beginning of the trial (Rec. Pp. 3, 4) to the effect that there is "no charge of infringement in 1,911,249" [3]—defendant should be enjoined from issuing, publishing or distributing to the trade in the future any circulars or other printed matter similar to, or of the character of, the "Announcement" of plaintiff's Exhibit 103-E containing any reference to United States Letters Patent No. 1,911,249, and also from knowingly permitting any verbal statements of such or similar character to be made (regarding that patent) by anyone duly authorized to represent it.

Conclusions of Law.

1. There is an actual controversy between the parties hereto as to the validity and infringement of Claim 5 of Stover patent No. 1,911,250.

2. This court has jurisdiction to hear and determine this cause upon all questions presented herein.

3. Claim 5 of Stover patent No. 1,911,250 is directed to a combination of steps constituting a process of incubation, which was new, novel and useful. The patent and particularly Claim 5 thereof is for a patentable invention.

4. Frank E. Stover was the first and original inventor thereof.

5. Defendant is the lawful owner of Stover patent No. 1,911, 250.

6. Stover patent No. 1,911,250 and particularly Claim 5 thereof (here in suit) is valid.

7. There is no clear and convincing evidence in the record in the instant case which was not before the Court of Appeals in the case of Cugley v. Bundy Incubator Co., 6 Cir., 93 F.2d 932, which convinces this Court that had such evidence been in the record in the Cugley case, the Court of Appeals would have reached a different conclusion with respect to the validity of Claim 5.

8. Plaintiff has, prior to the filing of the Bill of Complaint and subsequently thereto, manufactured and sold incubators with separate hatchers, the operation of which infringes upon Claim 5.

9. Plaintiff has directly and contributorily infringed upon Claim 5 of the patent in suit.

10. Defendant has not been guilty of unfair competition.

---

[3] The complete statement is set forth ante P. 448 of this decision.

456

**11.** Irrespective of Conclusion No. 10, defendant should be enjoined from doing the certain things set forth in Finding of Fact No. 28 hereof.

**12.** Defendant is entitled to recover from plaintiff its costs herein expended.

Counsel may prepare and submit a decree accordingly.