The BISHOP AND BABCOCK MANU-
FACTURING COMPANY,
Plaintiff,

v.

SEARS, ROEBUCK AND CO.,
Defendant.

No. 26102.

United States District Court
N. D. Ohio, E. D.

Sept. 13, 1954.

Brown, Jackson, Boettcher & Dienner, Chicago, Ill., M. B. & H. H. Johnson, Cleveland, Ohio, for plaintiff.

Kane, Dalsimer & Kane, New York City, and Allen Hull, Cleveland, Ohio, for defendant.

FREED, District Judge.

This is an action for the alleged infringement of plaintiff's Patent No. 2,-322,041, relating to a combination automobile heater and windshield defroster. The alleged inventor of the device set forth in the patent is Edward L. Mayo, the president of the plaintiff-corporation. The plaintiff acquired the patent by assignment from Mayo prior to the date óf issue. Plaintiff seeks an injunction and accounting.

The defendant challenges the patentability of the Mayo device on the grounds that it represents merely the product of mechanical skill as opposed to invention and that the prior art in the field discloses anticipation of all of the essential elements of the Mayo patent.

The defendant further maintains that certain of the claims of the questioned patent are invalid because of unreasonable delay in adding them to the application for patent during which time the claimed structures were developed and constructed by others. The defendant contends also that the plaintiff is barred by reason of laches from asserting infringement against it. The allegations of infringement are directed against three heaters sold by the defendant. The defendant concedes infringement as to two of these (identified as Sears Heaters Nos. 7762 and 7763), should the Court find the Mayo device patentable to the same extent found in prior litigation. See: Excel Auto Radiator Co. v. Bishop & Babcock Manufacturing Co., 73 U.S.P.Q. 475 (N.D.Ohio, 1948), affirmed 6 Cir., 1948, 167 F.2d 962, certiorari denied 1948, 335 U.S. 823, 69 S.Ct. 46, 93 L.Ed. 377. It denies infringement, however, in the case of the remaining device. (Sears Heater No. 7733).

By way of counterclaim the defendant seeks a declaratory judgment in its favor as to each of the defenses enumerated.

No probative evidence whatsoever was presented that the defendant was in any way prejudiced by the plaintiff's delay of approximately three years in amending its application for patent to include claims 8, 9, 12 and 13. The same may be said in respect of the defense of laches. The Court has not been apprised of the length of time between the date when the plaintiff first learned of defendant's alleged infringement or first acquired access to facts which should have put it on notice of such alleged infringement and the date of issue of the patent. Moreover, the defendant failed conclusively to show that it has been prejudiced by or changed its position as a result of plaintiff's delay.

In the absence of such showing the defense of laches is clearly inapplicable. France Manufacturing Co. v. Jefferson Electric Co., 6 Cir., 1939, 106 F.2d 605, certiorari denied 1940, 309 U.S. 657, 60 S.Ct. 471, 84 L.Ed. 1006.

As stated above, the plaintiff's device, manufactured in accordance with the patent in suit, is a combination automobile heater and windshield defroster. The Mayo heater utilizes a radiator or heating core heated by water drawn from the cooling system of the vehicle in which it is installed. The components of the Mayo heater are assembled in a unitary casing. The heating core or radiator is located in the front of the heater, the portion facing the interior of the passenger compartment when the heater is installed, and is virtually coextensive with the casing.

Situated immediately behind the heating core and confronting about two-thirds of the core is a propulsion type fan mounted on the forward end of the shaft of an electric motor. Mounted on the same shaft but rearward of the motor is a centrifugal (Sirocco type) blower. The blower is encased in a scroll housing from which there is a duct to which is affixed a hose and nozzle assembly leading to the windshield of the vehicle.

The heating core and the chamber immediately to the rear thereof are separated into two compartments by a wall or bulkhead. The larger of these compartments houses the propeller and the portion of the core which it confronts. The smaller adjacent chamber and the portion of the heating core which it confronts serve as a passageway for the air impelled by the centrifugal blower.

When the device is in operation, air enters the propeller chamber by means of ports in the side of the casing and is driven forward through the core, thus delivering a relatively large volume of heated air at a relatively low velocity to the interior of the car. The centrifugal blower, operating simultaneously with the propeller, sets up a vacuum which draws air from the interior of the car through the smaller portion of the heating core and the chamber to the rear thereof and thence to the centrifugal blower from which it is expelled to the windshield in relatively low volume at relatively high velocity. A portion of the air discharged by the propeller, after passing through the core, is immediately, and while still at a relatively high temperature, drawn back through the area of the core which fronts the adjacent chamber. Thus, there is accomplished a reheating of a portion of the air utilized in the defrosting function.

The issue of validity of the Mayo patent is complicated to some extent by the fact that the patent has previously been litigated. In the case of Excel Auto Radiator Co. v. Bishop & Babcock Manufacturing Co., supra, Excel tested the validity of the Mayo patent by seeking a declaratory judgment of non-patentability. The District Court found the patent valid, the Court of Appeals affirmed. The Court's attention was directed to numerous devices and patents which were claimed to have anticipated all of the essential elements of the Mayo heater. Both the Court of Appeals and the District Court held these devices inapplicable as anticipatory art.

The defendant takes the position that the decision in the Excel case on the question of validity is binding upon this Court only as to the matters which were before the Court in that case. In that respect the defendant vigorously calls the attention of this Court to three devices covered by Hueber Patent No. 1,-996,019, Gould Patent No. 1,676,021 and a heater manufactured by the plaintiff prior to the development of the device represented by the patent in suit. The defendant argues that each of these devices represents applicable prior art. While admitting that the Hueber and Gould patents were before the patent office in interferences involving Mayo and before the court in the Excel case, the defendant maintains that they were not considered to have anticipated the Mayo invention because the concept of invention presented to the court in that

case varied materially from that urged upon this Court. The defendant says that the question of the prior Bishop & Babcock device was not raised by the plaintiff in the Excel case for the same reason.

It is true that "'* * * when a patent has once been sustained by an appellate court, a subordinate court, dealing with the same patent subsequently, inquires first whether the second record contains anything not before the appellate court (whether mentioned in its opinion or not), and, if it finds something new, inquires next whether the new matter is of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, had it been advised of its existence.'" "The 'new matter' should be clear, substantial and reasonably conclusive." Petersime Incubator Co. v. Bundy Incubator Co., D.C.1942, 43 F. Supp. 446, 449. See also: Bellows-Claude Neon Co. v. Sun Ray Gas Corp., D.C.N.D.Ohio E.D.1929, 39 F.2d 907, affirmed 6 Cir., 1931, 49 F.2d 886; Lektophone Corp. v. Miller Bros. Co., D.C.Del. 1930, 37 F.2d 580. This is not to say, however, that the trial court is called upon to decide what metal process caused the appellate court to reach its determination. It is not mere deference to the Court of Appeals of this Circuit which impels this Court to say that there is no need to accompany counsel into the realm of conjecture to learn what process of reasoning prompted that Court to hold the Mayo patent valid. The Excel Auto Radiator Co. v. Bishop & Babcock decision is so clearly written that to read between the lines would be fallacious.

It is not questioned that when a patentee has advanced a particular theory of his invention and has obtained a decree of validity based thereupon, he may not in a later suit abandon that theory in favor of another when the evidence discloses anticipation as to the first. Kintner v. Atlantic Communication Co., 2 Cir., 1917, 240 F. 716, certiorari denied 244 U.S. 661, 37 S.Ct. 746, 61 L.Ed. 1377;

American Metal Cap Co. v. Anchor Cap and Closure Corp., D.C.E.D.N.Y.1921, 278 F. 670, reversed on other grounds, 2 Cir., 1927, 20 F.2d 725; cf. Timken Detroit Axle Co. v. Cleveland Steel Products Corp., 6 Cir., 1945, 148 F.2d 267, certiorari denied 1945, 326 U.S. 725, 66 S. Ct. 30, 90 L.Ed. 430; Marcalus Mfg. Co. v. Automatic Paper Mach. Co., 3 Cir., 1940, 110 F.2d 304.

The alleged change of theory by the plaintiff deals with the elements of opposite directional air flow and reheating. The plaintiff regards those functions as of relatively minor importance to the issuance of the patent and the prior decree of patentability. Mayo himself testified that opposite directional flow and reheating is "relatively unimportant" to his invention, that these functions are merely the necessary result of the arrangement of components within the device. He stated during the trial that they are of importance only "to the extent that anything you get for nothing is important." This view, the defendant contends, constitutes a violent departure from the theory relied upon in the Excel case in which the decree sustaining the patent was predicated in large measure upon the features of opposite directional air flow and reheating.

If the defendant is correct in its contention, it is apparent that the patents to Gould and Hueber and the earlier Bishop & Babcock device merited little consideration as anticipatory art in the Excel case because they accomplish no reheating or opposite directional air flow. Stripped of all unnecessary verbiage the defendant is actually inviting this Court to delve into the underlying thoughts of the members of the Court of Appeals and determine whether they would have found the Mayo heater patentable without consideration of the elements of reheating and opposite directional air flow. Such a course of procedure is obviously impossible.

Read in its entirety, the opinion of the Court of Appeals in the Excel case is to the effect that the Mayo unit

is patentable, not because of any one or two of the claims asserted or the elements included, but because of all of the elements generally, their arrangement within the device and the results achieved from their operation.[1] Accepting *arguendo* the defendant's assertion that Mayo's patent would have been held invalid without the features of reheating and opposite directional flow, this Court adheres to the opinion that Hueber, Gould and the prior Bishop & Babcock machine do not constitute applicable prior art.

The device described in the Hueber patent is a mere defroster attachment adaptable to use in conjunction with any suitable automotive heater. Its mode of operation is quite simple. An air scoop is placed over a portion of the core or radiator of the independently operated heater. When the heater is in operation a portion of the warm air expelled is drawn into the scoop and transmitted by means of a conduit to a centrifugal blower. The blower is mounted on the same shaft as the turbine which is driven by suction from the intake manifold of the automobile engine. The blower propels the warm air through a conduit to the windshield.

It is quite apparent that the Hueber device is not an integrated automobile heater and defrosting assembly, as is Mayo. Nor are both the heater and defroster elements propelled by a single motor as in the Mayo apparatus. Nor is there a "unitary framework"[2] or "casing"[3] housing both of these elements, as in the Mayo heater. The Hueber machine is dependent for its supply of warm air upon a separate heating device; the Mayo assembly produces within its own confines the warm air used for defrosting. The conclusion seems inescapable that the Hueber defroster is not applicable prior art.

The prior Bishop and Babcock device constitutes nothing more than a refinement of Hueber. It is not a material distinction that the Bishop & Babcock attachment utilizes its own electric motor to power the centrifugal blower, nor is it material that the Bishop & Babcock defroster is affixed more permanently to the heater, drawing heated air from an aperture in the side thereof rather than by means of a scoop confronting a part of the radiator.

The apparatus represented by the Gould patent is merely a heater and not an integrated heater and defroster. It is designed to form an integral part of the engine of the car. It utilizes the fan of the automobile engine to draw air through the automobile radiator and to conduct it by means of ports to an enclosure housing a centrifugal blower. The blower, mounted on the same shaft as the automobile fan drives the heated air through relatively long conduits to an aperture in the floor of the car.

Unless the Court were to adopt the far-fetched and ingenious interpretation of

---

1. Excel Auto Radiator Co. v. Bishop & Babcock Mfg. Co., 6 Cir., 167 F.2d 962, 966: "We agree with the District Court that the Mayo patent is clearly valid. It was old to heat the passenger compartment of an automobile with air warmed by the heat of the engine, radiated by the propulsion fan, and moving in a single path; it was old to convey heated air to the windshield for the purpose of defrosting. But the Mayo device is a highly integrated unit operated by a single motor which produces two currents of heated air directed simultaneously in different directions, the elements coacting in performing the functions of both heater and defroster. This combination was new."

Page 967: "Mayo's device is not an aggregation. It is a single unit comprising one heater and one radiator mounted in a single casing, with two fans operated by the same motor. The air heated for the passenger compartment is reheated and sent under increased pressure to the windshield. The simultaneous attainment of two results by a single coacting Mechanism which creates two specific currents of air, different both in volume and and in pressure, is evidence not of aggregation, but of true combination."

2. See notes 6 and 7 infra.

3. Claim 1, E. L. Mayo Patent 2,322,041, July 15, 1943.

considering the entire hood of the automobile and the components of the engine housed therein as the casing and framework of the heater, there is no framework or casing whatsoever in the Gould device. Certainly under no interpretation may the Gould heater be said to have a "unitary framework" or "a casing" as required by the Mayo patent. The Gould device does not anticipate the essential characteristics of the Mayo patent.

█ The Court is met next with the contention that the Mayo unit is nothing more than a mechanical combination of Hueber and Gould. A combination of Gould and Hueber reveals on its face that it does not bar the patent in suit. Although it is true that the Mayo patent combines many of the features of the two prior devices, that combination, in the opinion of the Court, accomplishes more than a mere application of mechanical skill. Much has been written about the distinction between mechanical skill and inventive genius. Repetition here would serve no useful purpose. In the final analysis the Court must draw the line between the two, relying on the guideposts of adjudicated cases.

The defendant concedes infringement as to its Heaters Nos. 7762 and 7763 if the Court finds the Mayo device patentable to the same extent found in the Excel case. Here again the Court is asked to interpret the underlying conceptions of the members of the Court of Appeals. To do so in this instance would be just as fallacious as in the prior one. The Court must rely on the lucid, unequivocal opinion of the Court of Appeals. All other considerations aside, this Court is of the firm conviction that the Mayo device is patentable, not alone because of the arrangement of the components therein, nor of their compactness, nor of the functions of reheating and opposite directional air flow; but rather of consideration *of all the elements of the patent* including the arrangement of components and the results thereof in operation.

█ The Mayo patent may be sustained only as a combination of old elements so arranged and coacting in such manner as to produce a novel function and result, as opposed to a mere aggregation of old elements culminating in no new functions or results. It is this distinction which sets off inventive genius from mere mechanical skill. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. The Mayo heater and defroster meets all of the requirements of a patentable combination and that the Court of Appeals so found in the Excel case upon consideration of *all the claims and elements* before it. It is apparent, therefore, that the defendant is, by its own concession, chargeable with infringement as to Sears Heaters Nos. 7762 and 7763.

The plaintiff accuses Sears Heater No. 7733 of infringement only in respect of Patent Claims Nos. 8,[4] 9,[5] 12 [6] and 13 [7].

4. A heater comprising, a heating radiator, *means for guiding air through the radiator in separate paths*, a fan of the axial delivery type for forcing air *through one path*, a fan of the radial delivery type for forcing air *through another path*, and a single motor operating both air forcing means. (Emphasis added.)

5. A heater comprising, a heating radiator, *means for guiding air through the radiator in separate paths, means for forcing air through one path, means for forcing air through another path*, and a single motor operating both air forcing means, one of the paths being of substantially less area than the other, and its air forcing means being adapted to force air at a substantially higher pressure than the other air forcing means. (Emphasis added.)

6. An automobile heater comprising a unitary framework adapted to be mounted in the passenger compartment, a radiator carried by said framework, connections for said radiator whereby hot water may be circulated therethrough, a motor mounted on said framework, a centrifugal blower carried on the shaft of said motor, a blower scroll housing for said blower carried by said framework, means for admitting air which has passed through

On the face of the patent these claims deal primarily with the arrangement of components within the Mayo device, as opposed to its operation. The defendant maintains, however, that the features of reheating and opposite directional air flow are implicit in Claims Nos. 8, 9, 12 and 13 and that Sears Heater No. 7733 cannot be held to infringe, inasmuch as it accomplishes neither of those functions. The plaintiff counters with the contention that Claims Nos. 8, 9, 12 and 13 are to be given a broader interpretation rendering them valid independently of the features of reheating or opposite directional air flow.

The fact that reheating and opposite directional flow, by the plaintiff's own admission, occurs only as an incidental result of the arrangement of the components and those features appear as prominent elements in other of the claims of the patent lends credence to the defendant's position. The Court, nevertheless, finds it unnecessary to decide this question. Granting the interpretation most favorable to the plaintiff, the Court is of the opinion that the defendant is not chargeable with infringement as to Sears Heater No. 7733.

The accused heater, just as the Mayo device, comprises a radiator core and an electric motor which drives both a propeller type fan and a centrifugal blower. Just as in the Mayo structure, the propeller serves as a heating agent; whereas, the centrifugal blower functions for the purpose of defrosting. The motor of the accused device is capable of being reversed. Because of the pitch of the propeller when the device is operated in the forward direction its primary function is that of heating the passenger compartment of the vehicle. When it is operated in the reverse direction its chief function is defrosting. It is this reverse operation with which we are here concerned.

When operating in the reverse direction the propeller and the centrifugal blower act in conjunction with one another to draw air through the entire core. After passage through the radiator a relatively small portion of the heated air escapes laterally into the passenger compartment of the vehicle, thus performing, to some extent, a heating function. The remainder and larger portion of the air is picked up by the centrifugal blower and driven out by means of conduits to the windshield for purposes of defrosting.

The plaintiff maintains that the centrifugal blower which is mounted in the center of the device creates a vacuum which causes the air used for defrosting to be drawn through the center of the radiator in a path separate and dis-

said radiator to the central portion of said housing, a restricted outlet for and exclusive to said housing and a conduit leading from said outlet, whereby said air may be discharged from said housing at relatively high pressure for conveyance to a relatively small area, and a fan of the propeller type also carried on said shaft of said motor, *said fan confronting a relatively large area of said radiator*, whereby a relatively large volume of air is thereby circulated at relatively low pressure through said radiator for heating said passenger compartment. (Emphasis added.)

7. An automobile heater comprising a unitary framework adapted to be mounted in the passenger compartment, a radiator carried by said framework, connections for said radiator whereby hot water may be circulated therethrough, a motor mounted on said framework within the bounding planes thereof, a centrifugal blower element comprising blades carried on the shaft of said motor and operating in a blower scroll housing having a restricted outlet exclusive to itself, whereby air which has passed through said radiator and to said blades is discharged from said housing at relatively high pressure, a conduit for conveying said high pressure air from said outlet to a remote relatively small area, and a fan element comprising propeller blades carried on said shaft of said motor and *confronting a relatively large area of said radiator*, whereby a relatively large volume of air is thereby moved axially and circulated at relatively low pressure through said radiator for heating said passenger compartment. (Emphasis added.)

tinct from that which enters the sides of the radiator and eventually escapes to the passenger compartment. This, plaintiff contends, constitutes a "means for guiding air through the radiator in separate paths" and a "means for forcing air through one path" and "means for forcing air through another path" within the meaning of Claims Nos. 8 and 9 of the patent in suit.

■■ The "means" in the Mayo device is the metal bulkhead separating the propeller compartment from the passage leading to the blower housing. In short, the plaintiff asserts that it is not essential to infringement that the "means" for obtaining separate air flows be a physical structure, as in Mayo, but that "means" refers as well to separate air flows obtained through areodynamic principles, as in the accused device.[8] The Court is unable to agree with so sweeping an interpretation. The principle is stated correctly in Getty v. Kinzbach Tool Co., Inc., 5 Cir., 1941, 119 F.2d 249, 250, certiorari denied 1941, 314 U.S. 651, 62 S.Ct. 97, 86 L.Ed. 522:[9]

" * * * In a patent for a combination, each element must be used, or its mechanical equivalent. The omission of any element, or the substitution of another not a mere mechanical equivalent to accomplish the same result, avers infringement. * * * "

The Court concludes that the accused device does not offer a "mechanical equivalent" of the "means" for obtaining separate paths of air found in the Mayo heater. Nor is it material that the elements in question might be considered non-essential to the operation of the device. Texas Co. v. Anderson-Pritchard Refining Corp., 10 Cir., 1941, 122 F.2d 829; Haynes Stellite Co. v. Osage Metal Co., 10 Cir., 1939, 110 F.2d 11.

Mayo's Claims Nos. 12 and 13 embrace, in reference to the propeller, a "fan confronting a relatively large area of said radiator." In this connection, defendant's argument that "a relatively large area" implies a correspondingly small area is well-taken. As it will be recalled, the Mayo propeller confronts only a section of the radiator, the remaining section serving as the air inlet for the centrifugal blower. In the accused device the propeller fan confronts virtually the entire radiator. Under the decisions previously cited, it must be held that the defendant's Heater No. 7733 does not infringe Claims Nos. 12 and 13. See: Getty v. Kinzbach Tool Co., Inc., supra, and cases cited in footnote 9, supra.

Plaintiff is, therefore, entitled to a judgment decreeing the validity of Letters Patent No. 2,322,041 and infringement on plaintiff's patent by Devices Nos. 7762 and 7763. An injunction will issue together with an order for accounting. A master will be appointed to fix the damage sustained by plaintiff resulting from the sale and distribution of the accused Devices Nos. 7762 and 7763. Further relief sought by the plaintiff will be denied. A decree will further issue declaring that defendant's accused Device No. 7733 did not infringe on plaintiff's patent, and plaintiff will be enjoined from hereafter asserting infringement in respect of the accused Device No. 7733.

---

8. It should be noted that Mr. Platt, in contradiction of the testimony of Dr. Baldwin, stated that the air immediately behind the radiator in the accused device does not flow in distinctly separate paths but rather that it is in a state of "turmoil".

9. See also, Montgomery Ward & Co. v. Rogers, 4 Cir., 1939, 100 F.2d 721, certiorari denied 1939, 306 U.S. 663, 59 S.Ct. 788, 83 L.Ed. 1059; Simons v. Davidson Brick Co., 9 Cir., 1939, 106 F.2d 518.